# COURT OF APPEALS OF VIRGINIA

## Record No. 1985-24-2

DEVINCHE JAVON ALBRITTON

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey

Opinion Issued July 7, 2026[*]

## FROM THE CIRCUIT COURT OF SUSSEX COUNTY
William R. Savage, III, Judge Designate

(DeVinche Javon AlBritton, on brief), *pro se*.

(Jason S. Miyares,[1] Attorney General; Jeremiah J. Johansen, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

DeVinche Javon AlBritton, an inmate in the custody of the Department of Corrections, filed a *pro se* motion for judgment in the Circuit Court of Sussex County under the Virginia Tort Claims Act, Code §§ 8.01-195.1 through 8.01-195.9. AlBritton alleged that he was injured when he tripped on an unfinished concrete walkway while incarcerated at Sussex I State Prison ("the Prison") in July 2016. A jury rendered a verdict for AlBritton on the question of liability but awarded no damages. In an October 2024 order, the trial court entered judgment on the jury's

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

verdict. AlBritton appeals, challenging the trial court's denial of his motion for a continuance, its refusal to give requested jury instructions, and its denial of his motion to set aside the verdict.[2]

## BACKGROUND

AlBritton's motion for judgment alleged that a correctional officer, Sergeant Claiborne, directed him to walk from his housing unit to the dining hall using a new, unfinished walkway with exposed, rusty metal rods. AlBritton claimed that he tripped on a metal rod and fell into an earthen trench where trash and dog feces had collected. He claimed that he punctured and scraped his leg on the metal rod and injured his knee, hands, arm, and shoulder when he fell. He asserted that he was denied medical treatment until he filed an emergency grievance, and then he received only a bandage, antibacterial cream, and a tetanus shot, which induced an allergic reaction. AlBritton included affidavits from four fellow inmates, Tyrone Harris, Curtis Slusher, William Hope, and Sean Roley, who stated that they witnessed the fall and denial of immediate medical attention.

On the morning of the jury trial, AlBritton told the trial court that only one of his inmate witnesses, Huayna Amaru, was present and that the others—Harris, Slusher, Hope, and Roley—had not appeared. The clerk reported that the absent inmates could not be found to be served. AlBritton objected, contending that he had done "all I could do to get the witnesses here."

The Commonwealth responded that AlBritton had identified only Amaru on his witness list, so the Commonwealth did not request a transportation order for the absent inmates. AlBritton contended that he had requested subpoenas for them and named them in an updated witness list along with providing their affidavits. He moved to continue the case until the inmates were found and served.

---

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

The Commonwealth objected, arguing that "the probative value would be quite low" because the absent inmates "all witnessed allegedly the same event." The Commonwealth argued that AlBritton and Amaru would both presumably testify that AlBritton had tripped and fallen. AlBritton countered that Amaru was not walking with him when he fell, so the absent witnesses would have "more details about the incident."

The trial court denied AlBritton's motion and stated that "[s]ubpoenas were issued for all . . . of these witnesses, but none of them got served. Either they'd moved or couldn't be found." The trial court explained, "Your motion to continue this case is denied because the [c]ourt has done what it's supposed to do in issuing subpoenas." "It's up to the plaintiff then to follow up and see if they're served, not served, or can be here or can't be here. It's not up to the [c]ourt to try to run down the witnesses. It's not up to the defendant to try to run down plaintiff's witnesses." The court also ruled that AlBritton's witness list did "not comply with the requirements of the pretrial scheduling order."

Amaru testified that while working in the kitchen on the day AlBritton fell, Amaru looked out a window and saw a group of inmates leave the housing unit, heading across the yard to the dining hall. Amaru saw Sergeant Claiborne redirect the group from one concrete walkway to a second walkway that was under construction. The walkway was about 100 yards long and the area being worked on was "left exposed without any caution tape with two-foot rebar and mesh wire sticking out." Amaru did not actually see AlBritton fall, but when he looked back out the window moments later, he saw a group of inmates carrying AlBritton to the medical unit.

AlBritton also called Lieutenant Gbeddy, a correctional officer at the Prison, who testified that inmates are required to obey the correctional officers' instructions when they move within the Prison. Lieutenant Gbeddy said that surveillance cameras overlooked the prison yard and an inmate would have to request the surveillance footage if he wanted it. AlBritton

introduced into evidence a document requesting the Prison preserve evidence "includ[ing] but not limited to completing the unfinished concrete and construction site" where he tripped and fell. The document asserted that the Prison was required "to photograph the relevant evidence prior to its destruction."

Lieutenant Gbeddy testified that an inmate who needed medical attention needed to notify the building supervisor, who would contact the medical unit. The medical unit would then decide whether the injury was so severe that the inmate needed to be brought over immediately, or whether the injury was minor and the inmate needed to file an emergency grievance describing the injury so the medical unit could evaluate whether it warranted bringing the inmate for an examination. For very severe injuries, the medical unit would take photographs and transport the inmate to the hospital. Lieutenant Gbeddy said that the medical unit would not photograph a minor injury.

AlBritton introduced into evidence the emergency grievance form he completed for the medical unit's examination, in which he wrote that he "pulled [a] muscle in [his] left leg" and "was punctured by the rusted metal wire." He claimed he "need[ed] a tetanus shot." The form indicates that AlBritton was "seen in medical and treatment [was] given." AlBritton also introduced an informal complaint in which he claimed he "scraped [his] left leg," "was bleeding," and pulled his muscle. He also acknowledged receiving the tetanus shot. Finally, AlBritton played a video for the jury describing how the body responds to cuts and the possibility of infection. AlBritton then rested and the Commonwealth did not present any evidence.

The transcript reflects that AlBritton proffered jury instructions for punitive damages, willful and wanton conduct, and reckless indifference or disregard, which the trial court refused. AlBritton also asked the court to instruct the jury on spoliation of the evidence, arguing that he had notified the Prison to preserve evidence by taking photographs of his injuries and of the

walkway while it was under construction, which the court again denied. The record includes only the jury instructions that the court gave; it does not include the jury instructions the court refused.

The jury returned a verdict for AlBritton on liability but awarded no damages. AlBritton moved to set aside the verdict as to the award of damages, which the trial court denied. The trial court explained that "there's virtually no evidence of any injury. No medical bills, no testimony of a doctor." The court also noted that Lieutenant Gbeddy, AlBritton's witness, "said that photographs and such are not taken in a case like this when the injuries are so minor, and that's determined by a medical person. There's no evidence to contradict that. So one can easily assume from that testimony that [there] wasn't much to it." The trial court entered judgment on the jury's verdict. AlBritton now appeals to this Court.

ANALYSIS

AlBritton first argues that the trial court erred by denying a continuance when his four inmate witnesses did not appear for trial. "The decision of whether to grant a continuance is committed to the discretion of the circuit court." *Shah v. Shah*, 70 Va. App. 588, 593 (2019). "A party challenging a circuit court's denial of a motion for a continuance must demonstrate both an 'abuse of discretion *and* resulting prejudice.'" *Bailey v. Commonwealth*, 73 Va. App. 250, 265 (2021) (emphasis in original) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). "Prejudice, however, may not be presumed; it must appear from the record." *Lowery v. Commonwealth*, 9 Va. App. 304, 307 (1990).

Here AlBritton does not show or even argue on appeal that he was prejudiced by the trial court's ruling. According to AlBritton's proffer, the absent witnesses would "have more details about the incident" than Amaru, because they were with him on the walkway when he tripped and fell while Amaru was not present. The jury found for AlBritton on the question of liability, so it

- 5 -

accepted his claim that he tripped and fell but declined to award him any damages. Nothing in AlBritton's proffer indicates that the absent witnesses would have provided any additional testimony relevant to damages, and the proffer certainly does not indicate that the trial court abused its discretion when it denied AlBritton's motion for a continuance.

In addition, even if AlBritton did suffer prejudice as a result of the trial court's decision to deny his motion for a continuance, AlBritton has not shown that the trial court abused its discretion by denying that motion. *See Harvey v. Flockhart*, 65 Va. App. 131, 141 (2015) ("The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case."). The trial court indicated that AlBritton's witness list did not comply with the pretrial scheduling order. Thus, given the considerable discretion possessed by the trial court when deciding to grant or deny a motion to continue, we simply cannot say that the trial court abused its discretion when it denied AlBritton's request for a continuance on the day of the scheduled jury trial after he failed to file a witness list that complied with the trial court's pretrial scheduling order.

AlBritton next asserts that the trial court erred by refusing to instruct the jury on punitive damages, reckless indifference or disregard, and spoliation of evidence. The record includes no such refused jury instructions. "An appellate court must dispose of the case upon the record." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993). "[T]he judgment of the lower court is presumed to be correct, and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred." *Id.* (quoting *Justis v. Young*, 202 Va. 631, 632 (1961)). Where jury "instructions tendered and refused are not properly made a part of the record . . . we cannot inquire into the propriety of the lower court's rulings with respect to them." *Paddock v. Mason*, 187 Va. 809, 812 (1948). Thus, because AlBritton failed "to include a[ny]

rejected jury instruction," "we consider the issue waived." *Smith v. Commonwealth*, 281 Va. 464, 469 (2011).

AlBritton asserts that the trial court erred by denying his motion to set aside the verdict on damages. Because the jury found for AlBritton on liability but awarded no damages, "the defendant was the prevailing party on that issue" and "is entitled to have the evidence viewed in the light most favorable to him" upon appellate court review of that issue. *Vilseck v. Campbell*, 242 Va. 10, 11 (1991).

"It is well-settled that 'a party who comes before us with a jury verdict approved by the circuit court "occupies the most favored position known to the law."'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Id.* (alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)).

> When "reasonably fairminded [persons] may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony," then such evidence is controverted, and the jury's verdict cannot be disturbed either by the circuit court or this Court.

*Cosby v. Clem*, 290 Va. 1, 2 (2015) (alteration in original) (quoting *Hundley v. Osborne*, 256 Va. 173, 178–79 (1998)).

As the trial court noted when it denied AlBritton's motion, there is "virtually no evidence of any injury." In the emergency grievance form which AlBritton introduced into evidence, he reported only that he had a pulled muscle and a puncture wound from the exposed metal. In the informal complaint, AlBritton did not mention a puncture wound and said only that he had scraped his left leg and pulled his muscle. In the emergency grievance form, he sought only a tetanus shot, and the form and AlBritton's informal complaint both indicate that he did receive the injection.

- 7 -

AlBritton conceded during the discussion of jury instructions that he did not introduce evidence of past or future medical expenses, loss of earnings or earning capacity, or property damage. Furthermore, he did not present any medical testimony. Therefore, the evidence was sufficient for the jury to conclude that he suffered no compensatory damages, and the trial court did not err by entering judgment on the jury's verdict.

CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*